## Scott's Estate.

*An executor is entitled to a credit in his administration account for fees paid to counsel for their professional services in establishing the validity of the will and the bequests therein contained, when the legatees entitled to the estate are the parties in interest.*

APPEAL from the decree of the Orphans' Court of *Lancaster* county in the matter of the administration account of Peter Kraybill, executor of John Scott, deceased.

On the 3d February 1820, John Scott made a will, by which, after directing the payment of his debts and certain legacies, and providing grave-stones for himself and mother, it was ordered that all " the remainder of his real and personal estate be applied to the education of poor children of all denominations to read the bible the best of all books." Peter Kraybill and another were appointed executors, with power " to sell the real and personal property and apply the same to the use above mentioned." John Scott died in 1842, leaving an estate amounting to $8324.08, all of which was personal, except a house and lot in Maytown which sold for $404. He died without leaving any known heirs or kindred, and information thereof was lodged with the Auditor-General by two individuals, who, in case they procured the escheat and succeeded in invalidating the will, would have been entitled under the Act of Assembly to one-third of the personal estate, and one-fifth of the real estate, as a reward for so doing, which reward would amount to the sum of $2720.82.

On the 12th October and 10th November 1842, Thomas Johnston and W. S. Campbell, the two individuals referred to, entered caveats against the probate of the will, and on the 22d March 1842, the Register's Court directed an issue, in which Peter Kraybill, one executor, was made plaintiff, and the said Johnston and Campbell defendants, for the purpose of determining whether the instrument produced was the last will of said Scott. On the day on which this issue was directed, in which Kraybill was made a party, he employed counsel to support the will, and to establish the charitable intentions of the testator. According to the report of the auditors, it appeared that " the counsel offered to try it

[Scott's Estate.]

through all the courts, both on the question of establishing the will, and of enforcing the legacy, for $500. The executor would not and indeed could not agree to this proposition, because if he lost, he would have to pay it himself, as there would be no funds applicable to the purpose." He then entered into an agreement, by which the counsel was to have one-fourth part (twenty-five per cent.) of all the estate, if the will should be established, so as to carry the estate according to the will, and to have nothing for all his services, if it were not established. It was shown in the evidence that the services of the counsel could not have been obtained upon more favourable terms, if his fee was left to depend upon the result; to have nothing if he failed. The issue was tried, the will was established, and the supposed uncertainty respecting the objects of the testator's bounty was cured by an Act of Assembly, by which the estate was directed to be paid to the Treasurers of the townships of East Donegal and Conoy, in trust for the support of the schools of said townships. The executor settled his account, paid the counsel the one-fourth according to the agreement in writing, and paid the remainder to the treasurers of the said townships, according to the directions of the Act of Assembly, they receipting for the same, " in full of the amount due from said executor" to the treasurers of said townships respectively, pursuant to the Act of Assembly passed 4th April 1843. These payments to the treasurers were made on the 14th October 1843, and the administration account was read and confirmed *nisi* on the 18th December 1843. On the 28th December 1843, petitions were presented by sundry citizens of the townships of East Donegal and Conoy, objecting to the compensation given to the counsel, and the court, considering the petitions as exceptions, appointed auditors. Those auditors, after hearing, reported in favour of the compensation, and that the accountant ought to be allowed credit for the same.

Exceptions were filed to the report of the auditor, and the court below delivered the following opinion:

Lewis (President).—It has not been contended that the counsel was bound to render his professional services for a less sum than the price specified in the written contract. Nor is it alleged that Kraybill can repudiate the contract and recover back the money paid under it, should he fail in receiving an allowance for those payments. The question on these exceptions to the auditor's report is, whether the accountant shall be allowed credit for payments actually made in establishing the will and the charity referred to. Since the report of the auditors and the evidence attached, it appears that the compensation, under all the circumstances, is not unreasonable in amount, inasmuch as it was entirely dependent upon success, and does not equal the reward offered by the Legislature to the parties opposing the will. The compensation to the counsel was $2050; the sum to be given to the other party,

[Scott's Estate.]

in case of success, is $2720.82. The compensation for which credit is claimed is therefore $670.82 less than the sum which would have been received by the party opposing the objects of the testator's bounty.

The only objection then is, whether the credit can be properly given in this account. The cases of *Deitrick's Appeal,* (2 *Watts* 332); *Koppenhaffer* v. *Isaacs,* (7 *Watts* 170); and *Mumper's Appeal,* (3 *Watts & Serg.* 443), settle the principle that the counsel fees paid by an executor or by an administrator *pendente lite,* for the trial of an issue of *devisavit vel non* cannot be allowed, where the effect of such allowance is to throw any part of those expenses upon "distributees," "creditors," and others, who had no interest whatever in the question, or whose interests were opposed to the course adopted by the executor in supporting the will. But the same cases also affirm the principle, that the parties to such a contest must pay their expenses out of their own pockets. 2 *Watts* 332. "That those who have a direct interest in the question should bear all the charges attending it." 3 *Watts & Serg.* 443. And "that the only persons interested in establishing the will are the devisees and legatees." *Ibid.* It is declared to be "just and equitable" that those persons thus interested should pay the charges of the contest. It will be remembered, that in this case, there is a power to sell and apply the funds thus raised to the uses directed by the will. A power given to an executor to sell real estate is by Act of Assembly an estate in the land, and gives the same powers and authorities over such estate, for all purposes of sale, conveyance, remedy by entry, *by action,* or otherwise, as if the same had been devised to such executor. This executor was the proper person to prosecute or defend actions concerning the real and personal estate, and is entitled to an allowance for fees paid counsel in respect to the execution of the will where such allowance works no injustice to others not interested in the question. *Burr* v. *M'Ewen,* (1 *Baldw.* 154). It is manifest that the allowance in this case works no such injustice. The creditors are all paid; the legatees and devisees, not interested in the question, are not affected; the charge is thus made payable by the parties for whose especial benefit the contest was conducted, and who have hereby secured a large sum of money which otherwise might have been lost to them. By allowing the credit in this account, the expense of the contest will fall upon "the legatees and devisees interested in establishing the will;" and those whose "direct interest" makes it "just and equitable" that they should pay the expenses, will thus be compelled to bear the charges of a contest conducted for their benefit. This is precisely according to the spirit and language of the decisions which have been cited.

It frequently happens that an executor fills the double capacity of executor and trustee; and this is the case with the accountant, who is made a trustee by virtue of the power to sell the real estate

[Scott's Estate.]

and the direction to apply the proceeds to the education of poor children. When this double capacity exists, the executor is allowed costs wherever a trustee would be allowed such disbursements. In an old case, the extra costs incurred by a trustee in defending a suit respecting his trust, were allowed him in his account, against his *cestui que trust.* *Amand* v. *Brodburn,* (2 *Ch. Ca.* 138). In a more recent case, where a testamentary paper was held void for uncertainty, it was suggested, that some of the defendants, being trustees, were entitled to costs as *between solicitor and client.* The court gave them costs as between party and party, but refused the more enlarged order for costs, as between solicitor and client, upon the ground "that the paper purporting to be a will had been declared void for uncertainty, that they were therefore trustees nullity, and that there was no fund out of which costs could come." *Mohan* v. *Mohan,* (1 *Swanst.* 201) ; *Beame on Costs* 158. It is plain from the case of *Mohan* v. *Mohan,* that if the paper purporting to be a will had been sustained, and a fund secured out of which costs could come, as in the present case, the charges, similar to those in this case, would have been allowed. And this very thing was done in the case of *Moggridge* v. *Mackwell,* (7 *Ves.* 36), where, in a case respecting *a residue disposed of to charitable purposes,* costs as between solicitor and client were given, not only to the executor, but to the next of kin, and the Attorney General to be paid out of the fund. The King in England is *parens patriæ,* and has the general superintendence of all charities, which he exercises by the Lord Chancellor ; and therefore, wherever it is necessary, the Attorney General, at the relation of some informant, who is called the *Relator,* files an information in Chancery, to have the charity properly established. A bequest for the education of poor children is such a charity as requires the parental protection of the King in England ; the Government of the Commonwealth here. In charity cases, the court often gives the relators costs "*beyond their taxed costs,* as otherwise people would not come forward to file informations." 7 *Ves.* 424. In a suit purely for establishing the charity, the court gave the relators their costs, *as between solicitor and client,* because of the benevolent object of the suit, and because the fund was ample for the purpose. *Attorney General* v. *Carte,* (*Appendix to Beame on Costs*). In *Cume* v. *Pye,* (17 *Ves.* 462), similar costs were given to the heir, the Lord Chancellor observing that it was frequently done in charity causes. In the *Attorney General* v. *Tonna,* (4 *Bro. C. C.* 177), which was a suit instituted to carry a charity into effect, the costs of the cause, as between attorney and client, were ordered to be paid out of the trust funds.

The case under consideration is the case of a charity ; the services of able counsel in establishing it were not to be obtained upon better terms, unless some one stood ready to make himself personally liable for the compensation, and no one was found ready

[Scott's Estate.]

to incur such risk.   The contract was fairly made; it has been performed by the attorney, and the money has been paid by the executor in good faith.   The auditors find it to be reasonable under the circumstances.   The treasurers have settled with the executor and given him receipts in full.   It is the opinion of the court that the executor had a right to incur the expenses in establishing the charitable bequest of his testator; that it would be unjust to make him bear the charges of the contest, when there is a fund amply sufficient for the purpose.   It is also the opinion of the court, that the credit may be properly allowed in this account.

It is ordered that the report of the auditors be confirmed.

*Ford*, for appellants, cited 2 *Watts* 333; 7 *Watts* 170; 3 *Watts & Serg.* 441.

*Fordney*, for appellees.

PER CURIAM. — It is not disputed that the fee paid to counsel was a reasonable and proper compensation; and the question is whether the executor or the charity shall bear the charge of it. An executor is bound to prove the will, and certainly not at his own expense.   When he meets with obstruction, it is his duty to remove it if he can; and he is unfaithful when he omits to attempt it.   A contest between ligitants for their individual interests, and not for the benefit of the estate, as was held in *Koppenhœffer* v. *Isaacs*, stands on different ground; but is this such a case? The executor litigated not for his own interest, but for the interest of the party who got the whole estate by the litigation, and now refuses to reimburse him his expenses.   Devisees might just as reasonably object to allow him the costs of an ejectment for recovering their land.   The case is too plain for argument.

Decree affirmed.