HENDERSON *vs.* SIMMONS.

[FINAL SETTLEMENT OF ADMINISTRATOR'S ACCOUNTS.]

33 291
f127 343
33 291
136 376

1. *Rent of dwelling-house charged against administratrix.*—An administratrix is chargeable, on final settlement of her accounts, with the reasonable rent of a house and lot belonging to the estate, which, instead of renting out, she herself occupied.
2. *Expense of repairing dwelling-house allowed as credit.*—The expense of repairing a dwelling-house belonging to the estate should be allowed as a credit to the administratrix, on proof that the repairs were necessary, the price reasonable, and the account paid by the administrator.
3. *Proof of payment by administrator.*—The creditor's receipt is sufficient to entitle the administrator to a credit for the payment of the demand, although it appears that the matter is left open for adjustment on settlement of their private accounts.
4. *Expenses of agent allowed as credit.*—Although it is the duty of an administrator to perform all the ordinary services of the administration, if reasonably within his power; yet, for extraordinary services, such as in their nature require appliances or a degree of skill not within the command of ordinary persons, he may employ agents; and the reasonable expenses of such agents are a proper charge against the estate.

5. *Competency of surety as witness for principal.*—The surety of an administrator is not a competent witness for his principal, on final settlement of the latter's accounts, (Code. § 2302,) to prove an item of credit.

6. *Expenses of propounding supposed will for probate allowed.*—Reasonable costs and expenses, incurred by an executor in propounding for probate a paper which purported to be the last will and testament of the decedent, are a proper charge against the estate, if the executor acted in good faith, and had no reasonable grounds for doubting the validity of the paper ; and if the executor resigns the trust, without paying such costs and expenses, and receiving no credit on account thereof, his successor may pay the demand, and charge the estate with the payment ; but this item only includes proper expenses incurred in a fair and lawful trial of an issue to test the validity of the paper, and does not embrace money paid in compromise of a contest respecting its validity.

7. *Attorney's fees not allowed as part of costs of contested probate.*—Reasonable attorneys' fees, paid by the administrator *de bonis non*, on account of services rendered on the contested probate of the supposed will, are allowable as a part of the costs of probate, if the attorneys were employed by the proponent and executor ; *secus*, if it appears that the attorneys were employed by the principal legatee under the supposed will, who afterwards became the administrator *de bonis non*.

8. *Costs of suit on witness-certificates not allowed.*—The costs of suit against an administrator, on witness-certificates issued in an action at law instituted by him or his predecessor, are not a proper charge against the estate, when it appears that he had in his hands, at the time when suit on the certificates was instituted, assets sufficient to pay them.

9. *Allowances to administrators generally.*—The law does not visit administrators, who fill a fiduciary relation which is indispensable in our judicial system, with severer intendments than are indulged against agents generally ; "some of the objections taken in this case betray a too rigid enconomy in the matter of allowances."

APPEAL from the Probate Court of Talladega.

IN the matter of the estate of Edward Henry, deceased, on final settlement of the accounts of the administratrix, Mrs. Angeline Simmons, at the instance of a succeeding administrator *de bonis non*, John Henderson. The intestate died in September, 1852, leaving a widow, but no living children ; but his widow, about six weeks after his death, gave birth to a posthumous child. On the 20th September, 1852, a paper which purported to be the last will and testament of the decedent, and in which the great bulk of his estate was bequeathed and devised to his widow, after deducting trifling legacies to his two adopted children, Edward and Mary J. Henry, was propounded for probate by William McPherson,

the executor therein named, and admitted to probate by the court. The validity of this paper was shortly afterwards contested by the said Edward and Mary J. Henry, and an issue *devisavit vel non* was made up between them and the executor. The case was strongly litigated, and involved the parties in heavy costs and expenses; but a compromise was finally effected, by which the contestants withdrew their objections to the probate. After the resignation of McPherson as executor, (the date of which is not shown by the record,) letters of administration *de bonis non* were granted to the decedent's widow, who afterwards married James W. Simmons, and who continued to discharge the duties of the trust until the 18th December, 1854, when she was succeeded by Thomas P. Renfro, the sheriff of the county, who in his turn was succeeded by John Henderson. On the final settlement of the accounts of Mrs. Simmons, numerous exceptions were reserved by both parties to the rulings of the probate court, and errors are here assigned by both parties. The material matters presented by these exceptions, so far as they are necessary to a correct understanding of the opinion of this court, may be thus stated:

"Henderson moved to charge the administratrix, on the debit side of her account, as per an item in her return of a sale of the property made by her on the 18th January, 1853, which is as follows: 'To A. Q. Nicks, for Angeline Henry, one hundred bushels of corn, (take all more or less,) at forty cents per bushel.' There was no amount carried out in said sale-bill, opposite said item; but, interlined below it, was the following memorandum: 'The above corn, all except forty bushels, turned over to James W. Simmons.' It was proved by one McKenzie, that he, at the request of Simmons, delivered to various persons, out of the crib on the place of the deceased, after a sale of said property at Fayetteville in said county, one hundred bushels of corn. William McPherson proved, that he, at the request of said Simmons, measured out and sold to various persons at the Fayetteville place, in the spring or summer after the sale of the perishable property, thirty-one ⅝ bushels of corn belonging to said deceased, which

was different from that proved by McKenzie. This being all the evidence in regard to said corn, the court charged the administratrix with only one hundred and eight bushels of corn, and refused to charge her, on motion of the administrator *de bonis non*, with one hundred and seventy-nine $\frac{5}{8}$ bushels; to which ruling of the court the administrator *de bonis non* excepted," and which he now assigns as error.

Henderson moved the court, also, to charge the administratrix with the rent of a house and lot in Talladega belonging to the estate. "To sustain this motion, he proved that said house and lot had been rented out by her, for the year 1853, for $125, with which amount she had charged herself in her account; that she, with her father, George Elrod, occupied said house and lot during the early part of the year 1854; that her father moved out of the house in the early part of the year, and she and her husband (James W. Simmons, with whom she had intermarried) continued to occupy it for the remainder of the year 1854; that said house and lot was reasonably worth for that year from $75 to $100, and (in the opinion of one witness) would have brought that at public outcry. Another witness testified, that the rent of said house and lot was worth $100, and that, in his opinion, it would have brought that at public outcry." The decedent's will, and an act of the legislature changing the names of his two adopted children, and making them his legal heirs, (which act was passed on the 29th January, 1850,) were also read in evidence on this motion. "There was no evidence that said administratrix had ever dissented from said will. She charged herself, in her account, with the hire of all the negroes for the year 1854, and the rent of all the real estate except said house and lot in Talladega. This was all the evidence on said motion; and thereupon the administrator *de bonis non* moved the court to charge the administratrix with the value of the rent as proved; which motion the court overruled and refused." This ruling of the court, to which Henderson excepted, is made the ground of an assignment of error by him.

The administratrix claimed a credit for $265, (as per

voucher No. 1 in her account,) being the amount of an
account due to George Elrod for repairs on dwelling-
house in 1854. The necessity of these repairs, and the
performance of the work by Elrod, were proved by the
administratrix; but there was no evidence of the value of
the repairs, or that the prices charged were reasonable.
The court intimated an opinion, that the item should be
rejected, because the account did not appear to be receipt-
ed, and there was no proof of its payment; but postponed
a decision on the question until the following morning,
to allow the administratrix to make proof of the payment.
When the account was produced next morning, a receipt
by Elrod was endorsed on it, and above the receipt was a
written memorandem, signed by James W. Simmons, in
these words: "The foregoing account, if allowed to
Angeline Simmons, as late administratrix of Edward
Henry, deceased, in her final settlement with the court
and her successor, will be allowed to George Elrod in his
settlement of his agency in that behalf, provided that no
item so charged shall be allowed more than once." "On
this evidence, with proof of the fact that said Elrod was
her agent for that purpose, as well as in conducting her
business generally, the administratrix asked the allowance
of a credit for said voucher. Henderson then proved, that
said statement signed by Simmons was written out by the
attorney of Mrs. Simmons, without any authority from
her, (except that he knew said Simmons was her husband,
and that Elrod had been her general agent in attending to
the business of the estate, and that she claimed a balance
in her favor on settlement of said agency;) that the re-
ceipt was written by Elrod after said statement was signed
by Simmons, and after the trial was commenced; and
that no money was in fact paid by Mrs. Simmons on said
voucher, but that said receipt was signed by Elrod in con-
sideration and on the faith of said agreement signed by
Simmons. There was proof, also, showing there was a
long and unsettled account between said Elrod and Mrs.
Simmons, relative to Elrod's said agency; that each party
claimed that, on a settlement between them, there would
be a balance in his or her favor; and that the amount

contained in this voucher was one of the items claimed by Elrod on said settlement. On this evidence, the court allowed the administratrix a credit for the full amount of said account;" to which Henderson excepted, and which he now assigns as error.

The administratrix also claimed a credit for $262 80, (as per voucher No. 46 in her account,) being the aggregate amount of the several sums paid by her to an agent, between the 30th November, 1852, and the 8th March, 1854. The items composing this voucher were thus stated: "Amount paid agent for going to plantation and collecting property, (six days,) $15;" "amount paid agent for one day's attendance, $2,00;" "attention to advertising, $2,00;" "hauling plunder, and having it appraised, $3,00;" "one day's attendance, $2,00;" "going to lower end of county, and bringing up negroes to hire out, $12,00;" "hiring negroes, (one day,) $2,00;" "furnishing wagon, and hauling negroes to Talladega, $3,00;" "getting papers from McPherson, (two days,) $4,00;" "attending to appraisement of property at Elrod's, $2,00;" "going to lower end of county, and selling property, (eight days,) $24,00;" "agent's expenses, $2,75;" "cash advanced, $,50;" "furnishing one hand to gather and take care of property, (eleven days,) $11,00;" "going to lower end of county, taking notes, and making settlement, (seven days,) $14,00;" "furnishing hand to measure corn and other things, (eighteen days,) $18,00;" "expenses paid agent, $,55;" "drawing off a list to return to court, $3,00;" "collecting in Coosa, (two days,) $2,00;" "auctioneer of sale, $1,00; "drawing sale-bill, $2,00;" "F. M. Thomason, auctioneer at sale, $5,00;" "agent to travel through Coosa, Talladega, and Shelby counties, to bring suits, (twelve days and expenses,) $36,00;" "paid J. W. Simmons to clerk, $3,00;" "agent to attend court, (nine days,) and collect, $27,00," "agent to go to lower end of county on business, (five days,) $15,00;" "paid agent to attend at Talladega, and take depositions, (one day,) $2,00;" "paid agent to go to Fayetteville to rent out land, (two days,) $6,00;" "paid agent for attending to business in lower part of county, (eight days,) $24,00;"

"paid agent to go to lower end of county on business, (three days,) $9,00;" "court expenses at Rockford, $10,00." The affidavit of George Elrod, "who was shown to be the agent who rendered the services charged in said account, was the only evidence offered by the administratrix to sustain said voucher." It was admitted, that said Elrod was one of the sureties on the official bond of the administratrix. Henderson objected to the allowance of said account as a credit to the administratrix, "because said Elrod was not a competent witness to prove said account, and because the items therein charged were not proper charges against said estate." The court overruled the objection to the competency of Elrod as a witness to prove the account, and allowed the administratrix a credit for $130 on said voucher; to both of which rulings Henderson excepted, and which he now assigns as error.

The administratrix claimed credits for vouchers Nos. 41, 44, 47, 48, 49, 50, 52, 53, 58, 61, 65, 66, and 77, which were contested by Henderson, and which were all taken up and tried together by consent. Voucher No. 41 was the obligation of Mrs. Simmons, her husband and father, to pay Edward Henry, jr., $2,300 in notes on good and solvent men, and was proved to have been given in compromise of the contest respecting the probate of the will, as above stated. Vouchers Nos. 44, 57, 61, and 77, were receipted accounts for attorneys' fees paid by the administratrix, on account of professional services rendered on the contest of the will; and it was shown that these attorneys were all employed by Mrs. Simmons before she became the administratrix of the estate. The other vouchers were receipts for witness-certificates, clerk's fees, sheriff's fees, &c., in the same case. The court refused to allow the administratrix a credit for voucher No. 41, (being for money paid Edward Henry on the compromise,) but allowed her credits for all the other vouchers so far as they were proved to have been paid; and to these rulings of the court exceptions were reserved by each party,—to the rejection of voucher No. 41 by the admin-

istratrix, and to the allowance of other vouchers by Henderson.

The administratrix also claimed a credit for voucher No. 67, amounting to $79 86, which was the amount paid by her on several judgments recovered before a justice of the peace on certain witness-certificates. "The proof about this was, that said suits were instituted on witness-certificates, issued by the clerk of the circuit court of Talladega county at the spring and fall terms, 1854 ; that the witnesses had been summoned at the instance of plaintiff, in a case in which Mrs. Simmons, as the administratrix of Edward Henry, was plaintiff, and B. M. Fluker was defendant ; that said suits were brought against Thomas P. Renfro, who was then the administrator of the estate,. on the 31st December, 1854 ; and that the costs accruing on said suits were about $16. The account of the administratrix, as filed, showed that about $14,370, including the sale of the personal property, and notes mostly good, had gone into her hands, all of which were due·long before said suits on the witness-certificates were instituted." On this evidence, Henderson objected to an allowance of a credit to the administratrix for any part of the costs of said suits, and reserved an exception to the overruling of his objection.

HENDERSON & McGEE, for the appellant.

PARSONS & J. WHITE, *contra.*

STONE, J.—The facts in this record are not full enough, to satisfy us that the probate court committed any error in the matter of the corn sold.

Mrs. Simmons, having occupied the house and lot in the town of Talladega during the greater part of the year 1854, is chargeable with a reasonable rent therefor. Smith v. King, 22 Ala. 558.

The court did not err in allowing voucher No. 1. The repairs on the house and lot are shown to have been necessary, and the testimony satisfies us that they were performed. We find nothing in the record to convince us that the repairs were not worth the price paid ; but, on

the contrary, we think it was reasonable. Mr. Elrod has receipted for this demand; and notwithstanding the subject is still left open for adjustment between him and Mrs. Simmons in their private accounts, it can never again be made a charge against the estate. There was no error in allowing this item.—Pinckard v. Pinckard, 24 Ala. 250.

It is evidently the duty of an administrator to perform all the ordinary services of the administration, if reasonably within his power. For these ordinary services in performing *ordinary* duties, he is not entitled to special and extraordinary compensation. For expenses necessarily incurred in and about the administration, he is entitled to be reimbursed.—See Newberry v. Newberry, 28 Ala. 691. For extraordinary services, and for such as in their nature require a degree of skill or appliances not within the command of ordinary persons, he may employ agencies; and reasonable expenses in this way incurred for the benfit of the estate, are a proper charge against such estate. Pinckard v. Pinckard, 24 Ala. 250; Reese v. Gresham, 29 Ala. 91; Shepherd's Digest, 162, 164–5.

Mr. Elrod was surety of Mrs. Simmons on her administration bond. If a decree be rendered against Mrs. Simmons, and execution returned no property found, an execution can then issue against him, also, for the collection of such decree.—Code, § 1922. Voucher No. 46 rests alone on Mr. Elrod's evidence. He was not a competent witness for the administratrix; and this item, without other proof, should be rejected.—Code, § 2302; McCreeliss v. Hinkle, 17 Ala. 459.

It is the privilege, if not the duty, of one named as executor of a paper purporting to be a last will and testament, to propound it for probate. If he have no knowledge or reasonable grounds on which to predicate a well grounded suspicion against the legality of the will, and propound the paper in good faith, he but carries out the intention with which he was appointed. Any reasonable costs and expenses incurred by him in the honest endeavor to give effect to the will, is a proper charge on the estate in his hands. Further, if he, after incurring such expenses, resign the trust without making payment, and

receive no credit in his account for such expenses, a succeeding administrator, in the execution of the will, may pay such expenses, and charge the estate therewith.

On the other hand, if the executor incur expenses in the fruitless attempt to establish a will, when there exist, within his knowledge, good grounds against its validity, a different rule prevails. This question, in a great degree, depends on the good faith with which the executor has acted. We lay down no absolute rule for the government of all cases, for each must, to a considerable extent, depend on its own circumstances. The right to charge the estate, however, in all cases, will be limited to proper expenses incurred in a fair and lawful trial of the issue *devisavit vel non.* It cannot be so extended as to embrace money paid to silence opposition to the establishment of the will.—Koppenhaffer v. Isaacs, 7 Watts, 170; Rogers' appeal, 1 Harris, (Penn.) 569; Scott's estate, 9 Watts & Serg. 98; Geddis' appeal, 9 Watts, 284; Bradford v. Boudinot, 3 Wash. Cir. Ct. 122; 1 Wms. on Ex'rs, 271; 1 Lomax on Ex'rs, 203; Wills v. Spraggins, 3 Grattan, 568–9.

Under these rules, we affirm the decree of the probate court, in allowing the costs of the contest of the will, and in disallowing the item of $2300, paid Edward Henry, jr., on compromise.

The item of attorneys' fees we would allow, if Mr. McPherson, the executor and proponent, had employed them. He, however, had nothing to do with it. They were employed by Mrs. Simmons, when she had no right to charge the estate. Not standing in any relation which made it either her legal or moral duty to establish the will, the expenses incurred by her to that end must be regarded as incurred for her personal emolument, and are only a personal charge on her.—Dietach's appeal, 2 Watts, 332. That item must be disallowed.

The matter of the receipt of Looney will probably not again be presented as it now is. The proof in the record is, perhaps, not full enough to exonerate the administratrix. The inventory is not before us, and we are not informed how she returned those notes to the probate

court. We deem it unnecessary to comment further on this item.

There is nothing in this record which enables us to determine that the witness-certificates, in the suit against Fluker, were not a proper charge against the estate. The costs incurred on them, after judgments were rendered, were incurred in her own wrong, as she had effects of the estate, and ought to have made payment.

Having disposed of all the questions raised by this record, we feel it our duty to remark, that some of the objections taken in this case betray a too rigid economy in the matter of allowances to administrators. They (administrators) fill a fiduciary relation which is indispensable in our judicial system; and in the absence of bad faith, the law does not visit them with severer intendments, than are indulged against agents generally.—See Gould v. Hayes, 19 Ala. 438.

Judgment of the probate court reversed, and cause remanded.

The principles we have announced dispose of the cross assignments of error, adversely to the party making those assignments. It results that there is no error in this record, prejudicial to Mrs. Simmons.