# Raines *v.* Raines's Executors.

*Bill in Equity by Legatees against Executors, for Settlement and Account.*

1. *Allowance to executors for amount paid to heirs in compromise of contested probate of will, and for counsel fees.* — Generally, an executor is not entitled to charge the estate with costs incurred in litigating the probate of the will, or money paid in compromise of a contest with the heirs respecting its validity ; yet, where, as in this case, he engaged in the litigation solely for the benefit of the legatees, who, being then slaves, were unable to litigate for themselves, and succeeded thereby in securing for them their freedom and a considerable portion of the estate, he was held entitled to a credit for the amount paid on the compromise with the heirs, and also for reasonable counsel fees incurred and paid in the litigation.

2. *Compensation of executors.* — A bequest to two executors of $1,000 each, " as a compensation for their services in executing the provisions " of the will, being considered wholly inadequate as compensation in this case, was construed to mean a legacy in consideration of their acceptance of the trust ; and an additional allowance of ten per cent., for extraordinary services attending the execution of the trusts conferred by the will, was upheld.

3. *Liability of executors for debts uncollected, or collected in Confederate currency.* — Executors are liable individually for the price of personal property sold by them under the authority of the will and purchased by themselves, and debts which they assumed for other purchasers and failed to collect, or collected unnecessarily in Confederate money and mingled with their own funds.

APPEAL from the Chancery Court of Barbour.

Heard before the Hon. B. B. McCRAW.

The bill in this case was filed on the 12th of September, 1870, by the appellants, claiming as legatees under the last will and testament of John W. Raines, deceased, against Edward B. Young and Wm. H. Thornton, the executors of said will ; and sought an account and settlement of the defendants' trust. The material provisions of the will, and the other facts of the case bearing on the questions here presented and decided, are stated in the opinion of the court. The final decree of the chancellor on the hearing, and his action on several exceptions to the report of the register as master under a reference of the matters of account, are now assigned as error.

[Raines *v.* Raines's Executors.]

BENJ. GARDNER, W. C. OATES, and THOS. H. WATTS, for appellants. — 1. The trusts created by the will, in favor of the complainants below, are valid, and may now be enforced by the courts. *Atwood's Heirs* v. *Beck*, 21 Ala. 590–624; *Abercrombie* v. *Abercrombie*, 27 Ala. 489; *Pool* v. *Pool*, 35 Ala. 12. The emancipation of the complainants from slavery removes the only obstacle which ever existed against the enforcement of the trusts in their favor. *Girod* v. *Lewis*, 6 Martin's La. R. 559; *Stikes* v. *Swanson*, 44 Ala. 63.

2. Having accepted the trust, the trustees can only be discharged by the action of some competent court, or on full settlement with the beneficiaries when *sui juris*. Perry on Trusts, §§ 274, 401, 920–21. Infants cannot consent to the discharge of the trustees, nor bind themselves by a release. Perry, § 923. If trustees pay money to a person not authorized to receive it, they are still liable for it. Perry, §§ 926–7.

3. The defendants' answers admit their acceptance of the trusts, and show their failure to execute the duties thereby imposed on them. They divided the trust funds among themselves, mingled them with their own funds, and used them in their business. They thereby became liable for these funds, and chargeable with interest; and no subsequent events growing out of the war, in whatever aspect considered, can relieve them from the effects of this conversion. Perry on Trusts, §§ 468, 471, 472; *De Jarnette* v. *De Jarnette*, 41 Ala. 708, and authorities there cited.

4. A court of equity has exclusive jurisdiction of such trusts, and the probate court has no jurisdiction whatever to enforce their settlement, or to decree a distribution of the trust funds. *Gould* v. *Hayes*, 19 Ala. 438; *Cockrell* v. *Hays*, 41 Ala. 75; *Perkins* v. *Lewis*, 41 Ala. 649. Hence, the appointment of Wood as guardian of the complainants, by the probate court of Barbour, and the settlement made in that court, and the payment of a portion of the funds to said Wood, did not discharge the defendants from liability to account in a court of equity. Tiffany & Bullard on Trusts, pp. 356–58.

5. The allowance of the amount paid to the heirs and distributees of the testator, to silence their opposition to the will, was improper. *Henderson* v. *Simmons*, 33 Ala. 291.

6. The executors became the purchasers of a considerable portion of the property, land, and slaves, at their own sale; they became personally responsible for some of the purchasers; they failed to collect many of the debts at maturity, and afterwards collected them in Confederate money. For all these amounts they are personally responsible. *Childress* v. *Childress*, 3 Ala. 752; *Chandler* v. *Shehan*, 7 Ala. 251; *King* v. *Shackleford*, 6 Ala. 423; *Purdom* v. *Tipton*, 9 Ala. 914;

[Raines v. Raines's Executors.]

Whitworth v. Oliver, 39 Ala. 288 ; Ward v. Oates, 42 Ala. 225 ; Hendricks v. Thornton, 45 Ala. 299 ; Edmonds v. Crenshaw, 14 Peters, 166.

7. The executors were not entitled to any greater compensation than that fixed by the will. They accepted the will with full knowledge of the provision for their compensation, and the court cannot relieve them from it. It may well be doubted whether they are entitled to the whole of this compensation, since they failed to execute the trusts of the will. Perry on Trusts, § 906.

8. At all events, the allowance for extraordinary services was erroneous, since there was no proof of any extraordinary services. Perry on Trusts, § 911 ; Newberry v. Newberry, 28 Ala. 691 ; Holman v. Sims, 39 Ala. 709 ; Dockery v. McDowell, 40 Ala. 476 ; Wright v. Wilkerson, 41 Ala. 267 ; Darrington v. Pearson, 32 Ala. 227 ; Ashurst v. Ashurst, 13 Ala. 781 ; Simmons v. Henderson, 33 Ala. 299.

9. Interest should have been charged against the defendants, with at least annual rests. Story's Equity, § 1277 ; Perry on Trusts, §§ 468–471 ; Rev. Code, § 2148 ; King v. Cabaniss, 12 Ala. 598 ; Pearson v. Darrington, 32 Ala. 227 ; Ivey v. Coleman, 42 Ala. 409.

10. No exception before the register is necessary, when the decretal order is erroneous. Bobe's Heirs v. Stickney, 36 Ala. 482 ; 9 Porter, 80.

JAMES. L. PUGH, contra. — 1. The executors acted solely for the benefit of the complainants in the litigation respecting the probate and validity of the will; and they should be allowed a credit for reasonable counsel fees incurred and paid by them, and also for the amount paid to the heirs in compromise of the contest. The complainants then had no standing in court, and could assert no rights under the will. No one but the executors could represent and protect their interests. Their own personal freedom, and a considerable portion of the property bequeathed for them, was the result of this litigation and this action on the part of the executors. But for the compromise, the complainants might have been sold as slaves, or the litigation might have been protracted until the destruction of slavery by the war, and the consequent loss of the greater part of the estate. The complainants are not in a condition to repudiate these acts, while claiming the benefit of them. The case of Prater v. Miller (25 Ala. 320) sustains the compromise. The power of an administrator even to compromise controversies involving the estate in his hands is fully recognized. 17 Ala. 170 ; 16 Ala. 221 ; 23 Ala. 548 ; 31 Ala. 180.

[Raines *v.* Raines's Executors.]

2. If an executor, administrator, or other trustee, acts within the scope of his duty, and exercises good faith and ordinary diligence, in regard to the trust property, he is not personally responsible for any loss that may occur to the estate from the insolvency of its debtors, or those who have possession of property belonging to it. *Dean & Wife* v. *Rathbone*, 15 Ala. 334; 3 My. & Cr. 496; 2 Story's Equity, 511, 512; 2 John. Ch. 76; 4 John. Ch. 619; 43 Ala. 628; 8 Ala. 27; 1 Ala. 594.

3. No question arises on the record as to the compensation allowed to the executors. The complainants made a general exception to the testimony taken and reported by the register on this point, but not to the allowance of the compensation. As to the practice on exceptions to the register's report under a reference, see *O'Reilly* v. *Brady*, 28 Ala. 530; *Stow* v. *Bozeman's Executors*, 29 Ala, 397; *Pearson* v. *Darrington*, 32 Ala. 238; *Mahone* v. *Williams*, 39 Ala. 221–26; *Kinsey* v. *Kinsey*, 37 Ala. 397.

B. F. SAFFOLD, J. — The appellants are the legatees, and the appellees the executors, of the will of John W. Raines, who died in Barbour county, in 1858. The will was admitted to probate on the 3d of January, 1859, after a fierce contest by the heirs-at-law of the decedent. The appellants sought, by this suit, to have a settlement of the administration, an account of the trust funds, and decrees in their favor for whatever amounts should be found due to them. The court granted the relief prayed for, and heard the cause on its merits. The bill was dismissed, on the ground that the defendants had properly accounted for their administration in the probate court, and, without executing any of the trusts, had paid to a duly appointed guardian of the appellants a sum of money equal to, or greater than, the amounts found to be due to them by the report of the register. Error is alleged, both in the confirmation of the report, and the dismissal of the bill.

The will first directs the payment of all the testator's debts. To this end, and the disposition made of the property, it empowers the executors, as such, to sell the entire estate, real and personal, at either public or private sale, and on such terms as they may deem most advisable. The complainants and their mother, who were the testator's slaves, were bequeathed to the executors, in trust, to provide for their remaining in Alabama free, if practicable; and, if not, to send them to one of the free States of the Union. After such disposition of them, a bequest in trust to the executors, of the whole estate, for the benefit of the children, was to take effect. The executors were empowered to appoint a trustee for these legatees, who should secure for them comfortable maintenance and education, and

provide for the safety and proper management of their property, and its final settlement upon them, protected from the marital rights of husbands. Should the appointment of this trustee be found impracticable, the said executors were to have a proper guardian or trustee appointed, by application to some court of competent jurisdiction in the State where they should settle. This guardian or trustee was to be invested with the same powers as if he had been appointed by contract with the executors. The executors were authorized to appropriate from the proceeds of the sale of the property whatever sum should be necessary to carry out the provisions of the will. The appellees were appointed executors.

The estate was sold in 1859, and about $75,000 was realized. No attempt was made to carry the beneficiaries beyond the State, or to procure permission for them to remain in Alabama, as free persons. The mother of the complainants was sent on a visit to Ohio; but, on her return, she objected to being removed from this State. The war came on directly, and put an end, for the time, to any project for their removal or emancipation. They became free, as a result of the war, with perfect right to remain here.

On the 14th of May, 1860, an annual settlement was made by the executors, from which it appears that there remained in their hands, subject to distribution, about $25,000. On the reference to the register, this settlement was assailed by the complainants only in respect to an allowance of $20,000 paid to the heirs-at-law of the testator in compromise and abandonment of their contest. A credit of $16,000 for counsel fees was objected to in the bill, but the objection is abandoned. The probate court allowed the executors $7,561, as commissions and extra compensation. This was in addition to $1,000 each, granted by the will. This item was also contested before the register. The above balance of $25,000 was divided between themselves by the executors, they proposing between themselves to be responsible each for the share he received.

The consideration of the cause will be rendered more plain and simple by treating now of the above exceptions. Money paid in compromise of a contest respecting the validity of a will, is not a proper charge upon the estate, against the heirs. Generally, an executor is not bound to become a party to such an issue, unless those interested will indemnify him against the cost of the investigation. His duty is performed, when, in good faith, and without reasonable grounds for doubting its validity, he propounds a paper purporting to be the will of the decedent. The costs and expenses of this should be charged against the estate. The parties to the issue, as they litigate for themselves, and not for the estate, are chargeable with the

costs of an issue *devisavit vel non.* The test is, whether the issue is individual or representative. The executor is entitled to costs, when he acts out of regard for the interests of those eventually found to be entitled to the property. On settlement with the beneficiaries, they may be decreed to pay the executor who compromised to establish the will. These propositions are legitimately drawn from the decisions in *Koppenhafer* v. *Isaacs*, 7 Watts, 170; *Geddis's Appeal*, 9 Watts, 284; *Rogers's Appeal*, 1 Harris (Penn.), 569; *Scott's Estate*, 9 Watts & Serg. 98; *Bradford* v. *Boudinot*, 3 Wash. Cir. Ct. 122.

In *Scott's Estate, supra,* the testator's will ordered that " the remainder of his real and personal estate be applied to the education of poor children of all denominations to read the Bible, the best of all books." The executors were empowered " to sell the real and personal property, and apply the same to the use above mentioned." The validity of the will was assailed, and the executor made an agreement with his counsel, by which he was to have one fourth of the estate, if the will was established, and nothing if it was defeated. He succeeded, and the amount was paid to him. Afterwards, on settlement of the executor's account, this item was objected to. The proof showed that the services of the counsel could not have been obtained upon more favorable terms, if his fee was contingent. The court said: " The executor litigated, not for his own interest, but for the interest of the party who got the whole estate by the litigation, and now refuses to reimburse him his expenses. Devisees might just as reasonably object to allow him the costs of an ejectment for recovering their land. The case is too plain for argument."

The proof in the present case shows, that the appellant legatees were in imminent danger of losing the probate of the will, and, with it, their freedom. In addition to a strongly aggressive public sentiment against the provisions of the will, the testator was suffering from apoplexy, and the testimony was very contradictory in respect to his mental capacity. The facts and the authorities cited establish the correctness of the credits for the compromise and services of the counsel.

2. The testator bequeathed to each of the executors $1,000, " as a compensation for their services in executing the provisions" of the will. This compensation was altogether inadequate. We can hardly suppose that he meant what he said. By making it a bequest, it would scarcely be a strained construction, that he intended it as a gratuity, or acknowledgment of the service they would render him in executing his will. He would not have had his will fail of execution because of the meagre compensation allowed. However this may be, he

authorized the executors to appropriate "whatever sum" should be necessary to carry out the will. He did not mean by this, that the sums should, in every instance, be paid to other persons than themselves. The Revised Code (§ 2161) allows commissions of two and one half per cent. on the receipts, and the same on the disbursements, and for special or extraordinary services, such compensation as is just. In *Pinckard* v. *Pinckard* (24 Ala. 250), the administrator was allowed five per cent. on the amount of the estate, which he managed in making a crop for nearly a year. The estate was worth $25,000, and the service was considered extraordinary. The executors, in the present case, had managed the property about two years when the allowance was made to them, in one of which they had made a crop. Besides this, the contest of the will must have been very annoying and vexatious to them. One of them testifies, that the heirs-at-law gave them a great deal of trouble, by coming on the plantation, and carrying off such things as they chose. Under all the circumstances, we do not think the charge was excessive; certainly not so much so as to reverse the decision of the chancellor.

3. The executors explain that, in charging themselves with the balance of $25,000 found in the settlement of 1860, and in dividing the amount between themselves, they merely so disposed of the debts due from the purchasers of the property. They claim that a large portion of these debts, which were perfectly good when contracted, were paid to them in Confederate money, and that they were not otherwise collectible at any time since they were so paid. The register, in his first report, refused to allow them any credit whatever on this account, and the court sustained their exception to the report. The instructions given to the register on this point, on recommitment of the report, seem to be correct, and in accordance with repeated rulings of this court. His second report allows nearly $19,000 of credits for Confederate money received, or uncollectible notes. It omits the credit of $20,000 paid in compromise of the probate of the will, and finds the executors indebted about $30,000. The sole exception to this report made by the complainants is, that the register refused to compute interest from May, 1860, to November, 1865. The chancellor reversed his former ruling in respect to the allowance of the credit claimed for the payment made to the heirs-at-law on compromise, and, in addition, credited the amount reported due with about $20,000 which the said executors in 1866 had paid to F. M. Wood, appointed guardian of the appellants by the probate court of Barbour county. Finding thus that no balance remained in favor of the complainants, he dismissed the bill.

[Raines *v.* Raines's Executors.]

The evidence upon which the register acted is submitted. It appears that he allowed a credit of $1,795, the amount due from Mrs. Thornton, which the executor Thornton says he assumed. He also allowed a credit of $8,580 due from Gordon. This debt was assigned to Young in the division of assets between the executors referred to. He says he mingled the trust funds with his own indiscriminately, and he appears to have collected them in Confederate money without objection, and without necessity. His showing of the insolvency of Gordon is not satisfactory. These are two errors in the confirmation of the report, for which the decree must be reversed.

Nothing can be decided in this case in respect to the guardianship of Wood. He is not made a party. Whether the executors did right in paying to him $20,000, must be the subject of further investigation, in which he must be heard. On another hearing, there will be no necessity for going behind the settlement of May, 1860. Its correctness is sufficiently established. Let the $25,000 of balance be accounted for. The commingling of the trust funds with their own is a strong point against the executors. Nevertheless, my own opinion is, if they show clearly that the debts were adequately secured in the first instance, and that due diligence on their part would not have availed to collect them, in whole or in part, they should receive credit for such portions as would have been unavoidably lost. This is due, not as a general rule, but to the extraordinary circumstances attending their administration. Mixing funds is a very ambiguous expression, likely to be abused for want of discrimination. To avoid it, it is not necessary to preserve the identical trust funds, the same coin or bank notes. But the court is of opinion, that the executors are personally liable for any of the trust property which they shall be shown to have mixed with their own; and I concede that this is the general rule. Perry on Trusts, §§ 847, 843; *Caffrey* v. *Darby*, 6 Vesey, 496; *Tyler* v. *Tyler*, 3 Beav. 568.

It is proper that the whole matter pertaining to this trust, including the guardianship of Wood, should be finally settled in this suit. And to this end, without further expression of opinion, the decree is reversed, and the cause remanded.