DANIEL L. HAZARD *et al. vs.* SAMUEL ENGS *et al.*

On appeal from the decree of a Probate Court proving a will, the executor named in the will may, if acting in good faith, prosecute the probate in the appellate court at the expense of the estate.

The reasonable expenses incurred by such executor in so doing are " necessary expenses incident to administration."

BILL IN EQUITY for an injunction.

*Providence, October* 4, 1882. DURFEE, C. J. This is a suit in equity brought by the heirs at law of the late John Alfred Hazard, against Samuel Engs and Benjamin Hazard, named as executors in a paper, purporting to be the last will and testament of the said John Alfred, and against the Newport Hospital, named as residuary devisee or legatee therein. The bill sets forth that John Alfred Hazard died May 26, 1880, leaving property worth $300,000, of which $71,000 was personalty, and the rest real estate, and no debts. The bill also sets forth that the defendant Benjamin Hazard, immediately after the death of John Alfred, presented the paper purporting to be his will for probate to the Probate Court of the city of Newport ; that the paper was ad-

mitted to probate July 12, 1880, and the defendants Engs and Hazard appointed executors ; that they have taken possession of the personalty and collected some of the rents of the real estate ; that an appeal, taken by the complainants from the decree admitting the paper to probate, is still pending in this court, having been twice tried to a jury without reaching judgment ; that the defendants Engs and Hazard, as executors, are using the funds in their hands belonging to the estate to defray the expenses of litigating the appeal, thus employing the property of the complainants to defeat their rights, having already, as alleged on information, expended $10,000, and that, although they have acted as executors for over two years, and have collected the rents of some of the real estate, they have never either given bond or rendered an account. The bill prays that the defendants Engs and Hazard may be enjoined from expending the estate in further contesting the appeal. The defendant Engs, in his answer, denies the allegation that he has expended $10,000, or any sum beyond what was reasonable and proper, and demurs to the rest of the bill. The defendant Hazard, in his separate answer, avers that he has only consented to the expenditure of about $300, and that if more has been expended, it has been without his knowledge or consent. The case is tried on bill, answers, and demurrers.

The question presented is, whether on an appeal from a decree admitting a will to probate, the persons nominated as executors are entitled, acting in good faith, to prosecute the probate in the appellate court at the expense of the estate. The Digest of 1798 made it the duty of any executor named in a will, knowing that he had been so named, to cause the will, within thirty days after the decease of the testator, " to be proved and recorded in the clerk of probate's office of the same town where the deceased person last dwelt," or to present the will and declare his refusal in writing. This provision remained substantially unaltered down to 1882, when the Public Statutes went into effect. The practice under the provision has been for the executor named to take upon himself the probate of the will both in the lower and the appellate court. In the Public Statutes, however, there is a change of language, and now the provision is, not that the executor shall cause the will to be proved and recorded, but that he shall " lodge such

will for probate and record." It is difficult to imagine why the ancient language was changed, unless there was a purpose to change the law itself and the practice under it; but it is equally difficult to suppose, if the purpose was to change so materially the law and the practice under it, that the purpose would not have been more clearly demonstrated. Upon the whole we are inclined to think that the change was intended to be merely verbal. It was probably observed that the language of the old statutes, taken literally, made it the duty of the person nominated as executor to *cause* the will to be *proved* and *recorded* within thirty days. Whereas the most he could do was to present the will and the evidence in support of it, which alone might take over thirty days, leaving it to the courts to decide whether it should be " proved and recorded ; " and therefore, though no harm had ever come of the old form of speech, it was probably deemed best to change it, so that literally taken it could not be held to mean more than it had always been construed to mean. Unfortunately, the new language is rather inexplicit. It does not expressly declare that the executor shall take upon himself the duty of doing what is reasonable to establish the will. We think, however, that it is implied or assumed that he shall or will do it unless he renounces. He is required, unless he renounces, to lodge the will "*for* probate and record; " and therefore, inasmuch as the will does not prove itself, and cannot be recorded until proved, the inference is that he is to take the proper steps to obtain the probate and record. It is assumed, apparently, that he will do this as a part of his official duty, unless he refuses the executorship; and there is excellent authority for holding that it is a part of his duty. And see particularly the language of the Digests of 1767, 1798, 1822, and 1844, for clear recognitions of " the duty or trust."

It is laid down in 1 Williams on Executors [311], 6th Amer. ed. 355, that " The person alone by whom the testament can be proved is the executor named in it, whom the Court of Probate may cite to the intent to prove the testament and take upon him the execution thereof, or else to refuse the same." The reference is 1 Salk. 308 ; Swinb. pt. 6, § 12, pl. 1 ; Godolph. pt. 1, c. 20, § 2. " The executor," says Redfield, " is presumed to have the custody of the will, and he is the only person who can in the first

instance properly prove the will." 3 Redfield on Wills, 8. In *Bradford* v. *Boudinot*, 3 Wash. C. C. 122, the court say: " The executor, believing the paper under which he acts is the last will, is authorized, and it is his duty to support the first probate, and he is entitled to retain the expense of the litigation out of the estate." See also *Enloe* v. *Sherrill*, 6 Ired. 212 ; *Stebbins* v. *Lathrop*, 4 Pick. 33 ; *Smith* v. *Moore*, 6 Me. 274. In *Wills* v. *Spraggins*, 3 Gratt. 529, 542, the court state the law as follows, to wit : " The ecclesiastical courts, as is well known, have jurisdiction only of wills of personalty, and regard the executor named as the only proper person to propound the will for probate, whether voluntarily or upon the citation of others interested in the subject. He is the representative of the will, and of all interests created by it, and, moreover, the legal owner of the testator's personal estate. It is, therefore, his right and his duty to obtain for the instrument the sanction prescribed by law." And the law is laid down in similar language by the Supreme Court of Alabama in *Henderson* v. *Simmons*, 33 Ala. 291, 299. " It is the privilege," say the court, " if not the duty, of one named as executor of a paper purporting to be a last will and testament, to propound it for probate. If he have no knowledge or reasonable ground on which to predicate a well-grounded suspicion against the legality of the will, and propound the paper in good faith, he but carries out the intention with which he was appointed. Any reasonable costs and expenses incurred by him in the honest endeavor to give effect to the will, is a proper charge on the estate in his hands." This seems to be not only good law but also good sense ; for the will may contain gifts to persons who are either not yet in being or not yet ascertained, and who, therefore, cannot protect themselves, and whose rights might be sacrificed by a rejection of the will, unless the executor should take on himself the duty of establishing it.

The complainants cite cases which show that a different view of the law has been adopted in Pennsylvania, but in that State the probate system or practice seems to be quite different from ours. Other cases cited are not in point. In *Andrews' Executors* v. *His Administrators*, 7 Ohio St. 143, and *Browne* v. *Vinyard*, Bailey Eq. 450, the expenses were not incurred in prosecuting the pro-

bates, but in defending the wills from attacks commenced after probate. In *Meek* v. *Allison*, 67 Ill. 46, and *Edwards* v. *Ela*, 5 Allen 87, the expenses were incurred by administrators in opposing the probate of wills first propounded for probate after administration granted.

It does not necessarily follow that the executors are not entitled to prosecute the probate because they have not given bond; for the will may exempt them from giving bond. The bill alleges nothing against their responsibility. We think the expenses reasonably incurred by the executor in prosecuting the probate are to be regarded as "necessary expenses incident to administration," and that they are entitled under Pub. Stat. R. I. cap. 186, § 1, to priority in settlement. Of course, it is the duty of an executor to exercise prudence and discretion, and not incur unreasonable or unnecessary expenses in his endeavors to establish a will; and expenses incurred beyond what are fairly reasonable or necessary should be disallowed. But that is a matter for the Probate Court in settling the administration account.

*Bill dismissed with costs.*

*Hazard Stevens*, for complainants.
*William P. Sheffield*, for respondents.